Citation Nr: AXXXXXXXX
Decision Date: 10/29/21 Archive Date: 10/29/21

DOCKET NO. 190719-24760
DATE: October 29, 2021

ORDER

Service connection for right tibial and fibular fractures is denied.

Service connection for migraine headaches is denied.

Service connection for an acquired psychiatric disorder is denied.

Service connection for bilateral hearing loss is denied.

Service connection for bilateral tinnitus is denied.

FINDINGS OF FACT

1. The decedent served in the United States Marine Corp Reserve with a period of active duty for training (ACDUTRA) from June 1963 to December 1963.

2. The appellant has not met the burden of proof of showing a permanent increase in the decedent's preexisting right tibial and fibular fractures during his period of ACDUTRA.

3. The decedent served at Camp Lejeune for at least 30 days; however, neither migraines nor acquired psychiatric disorders are enumerated diseases presumptively related to Camp Lejeune contaminated water exposure; there is no competent evidence that such are due to the decedent's ACDUTRA, to include exposure to the contaminants at Camp Lejeune.

4. The preponderance of the evidence of record is against finding that the decedent had a bilateral hearing loss disability for VA purposes at any time during or approximate to the pendency of the claim.

5. The preponderance of the evidence is against finding that tinnitus began during active service or is otherwise related to an in-service injury or disease.

CONCLUSIONS OF LAW

1. The criteria for service connection for right tibial and fibular fractures have not been met. 38 U.S.C. §§ 101(24), 1110, 5107; 38 C.F.R. §§ 3.6, 3.102, 3.303.

2. The criteria for service connection for migraine headaches have not been met. 38 U.S.C. §§ 101(24), 1110, 5107; 38 C.F.R. §§ 3.102, 3.6, 3.303, 3.307(a)(7)(iii), 3.309(a).

3. The criteria for service connection for an acquired psychiatric disorder have not been met. 38 U.S.C. §§ 101(24), 1110, 5107; 38 C.F.R. §§ 3.6, 3.102, 3.303, 3.307(a)(7)(iii), 3.309(a).

4. The criteria for service connection for bilateral hearing loss have not been met. 38 U.S.C. §§ 101(24), 1110, 5107; 38 C.F.R. §§ 3.6, 3.102, 3.303, 3.385.

5. The criteria for service connection for bilateral tinnitus have not been met. 38 U.S.C. §§ 101(24), 1110, 5107; 38 C.F.R. §§ 3.6, 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The decedent served in the United States Marine Corps Reserve, with a period of active duty for training (ACDUTRA) from June 1963 to December 1963. He died in October 2018. The appellant, who is the decedent's surviving spouse, was substituted as the claimant in February 2019.

Rating decisions were issued under the legacy system in February 2018 and April 2018, and the decedent submitted a timely notice of disagreement. In July 2019, the agency of original jurisdiction (AOJ) issued two statements of the case (SOC). The appellant opted the issue on appeal into the modernized review system, also known as the Appeals Modernization Act (AMA), by submitting a July 2019 VA Form 10182, Decision Review Request: Board Appeal, identifying the July 2019 SOCs. Therefore, the two July 2019 SOCs are the decisions on appeal.

In the July 2019 VA Form 10182, Decision Review Request: Board Appeal, the appellant elected the Hearing docket. Therefore, the Board may only consider the evidence of record at the time of the July 2019 SOCs, as well as any evidence submitted by the appellant or her representative at the hearing or within 90 days following the hearing. 38 C.F.R. § 20.302(a).

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004).

The preliminary determination in any claim for veterans' benefits is whether the claimant is considered a "veteran" as defined under VA law. See Dingess v. Nicholson, 19 Vet. App. 473, 484 (2006). Special rules apply to National Guard and Reserve service. Service in the National Guard or Reserves, even during period of ACDUTRA without more, will not suffice to give one "veteran" status. Donnellan v. Shinseki, 24 Vet. App. 167, 172 (2010). 

A veteran is "a person who served in the active military, naval, or air service, and who was discharged or released there from under conditions other than dishonorable." 38 U.S.C. § 101 (2); 38 C.F.R. § 3.1 (d). ACDUTRA is, among other things, full-time duty in the Armed Forces performed by Reserves for training purposes or by members of the National Guard of any state. 38 U.S.C. § 101 (22); 38 C.F.R. § 3.6 (c)(1). Thus, in order to establish "veteran status" with respect to service in the Reserves or National Guard, and therefore eligibility for service connection, the record must establish that a claimant was disabled due to a disease or injury incurred or aggravated in the line of duty during a period of ACDUTRA, or that he or she was disabled from an injury incurred or aggravated in the line of duty during a period of inactive duty for training (INACDUTRA.) See Mercado-Martinez, 11 Vet. App. at 419; Paulson v. Brown, 7 Vet. App. 466, 470 (1995); Biggins v. Derwinski, 1 Vet. App. 474, 478 (1991); see also 38 U.S.C. § 101 (24); 38 C.F.R. § 3.6 (a).

The presumption of soundness applies only when a disease or injury not noted upon entry to service manifests in service, and a question arises as to whether it preexisted service. Gilbert v. Shinseki, 26 Vet. App. 48, 55 (2012), aff'd 749 F.3d 1370 (Fed. Cir. 2014). In order to establish aggravation, the appellant has the burden by benefit of the doubt standard of showing a permanent increase in disability during the relevant period of ACDUTRA, and that such permanent increase was beyond the natural progress of that disability. See Donnellan v. Shinseki, 24 Vet. App. 167, 173-75 (2010).

1. Service connection for right tibial and fibular fractures is denied.

The appellant seeks service connection for the decedent's right tibial and fibular fractures. The decedent and the appellant asserted his right tibial and fibular fractures onset prior to his ACDUTRA service from June 1963 to December 1963 and were aggravated by such service. See, e.g., March 2021 Board hearing transcript at 6. 

For the reasons that follow, the Board finds entitlement to service connection is not warranted.

The decedent's June 1963 enlistment report of medical examination reflects a normal clinical evaluation of the lower extremities. The decedent also denied a history of bone, joint, or other deformity on his June 1963 enlistment report of medical history. His December 1963 release from ACDUTRA report of medical examination similarly reflects a normal clinical evaluation of the lower extremities. 

Additional records from the decedent's Reserves service includes a March 1964 report of medical examination also reflects a normal clinical evaluation of the lower extremities. However, he endorsed a history of bone, joint, or other deformity on his March 1964 report of medical history. The report indicates he broke his arms and leg at age 11. A June 1965 service treatment record indicates the decedent had a history of fractures of the right leg in 1955 with current complaints of right leg pain. He was not recommended for retention. A July 1965 retention report of medical examination similarly reflects a history of fracture of the right tibia and fibula. While he denied a history of bone, joint, or deformity on his July 1965 report of medical history, the report indicates the decedent was in an auto accident in 1955 and sustained a fracture of the right tibia and fibula with current pains in the soft tissue. A July 1965 personnel record reflects the decedent was recommended for discharge from the Reserves for physical disqualification.

Generally, the decedent's post-service treatment records reflect right leg pain. An April 2005 private treatment record notes the Veteran was able to move all extremities without difficulty. A December 2010 private treatment record notes right lower extremity pain for the last 24 hours and new onset of constant weakness of the right leg. An October 2016 private treatment record notes normal muscular strength and tone. 

In a March 2018 VA Form 21-4138, the decedent's representative asserted his right leg condition was aggravated during service as evidenced by him being recommended for release based on his reports of right leg pain. 

During the March 2021 Board hearing, the appellant reported the decedent was recommended for an orthopedic consultation to fix his right leg in June 2015. She further reported his right leg fracture occurred in a 1955 motor vehicle accident; however, he reinjured his right leg in 1963. See March 2021 Board hearing transcript at 6.

After a review of the evidentiary record, the Board finds the preponderance of the evidence weighs against service connection for right tibial and fibular fractures. 

The decedent served with the Reserves and his service personnel records reflect that he did not have any active duty service. Additionally, the appellant has not previously established service connection for a period of ACDUTRA or INACDUTRA. As the appellant has not established "veteran" status, no presumptions, including the presumptions of soundness and aggravation, are applicable. See Paulson v. Brown, 7 Vet. App. 466, 470 (1995); see also Smith v. Shinseki, 24 Vet. App. 40 (2010).

Initially, there is a question as to whether the decedent's right tibial and fibular fractures preexisted his ACDUTRA service from June 1963 to December 1963. Specifically, the decedent and the appellant have reported he injured his right leg in 1955. While the evidence establishes that the decedent injured his right leg in 1955, the record does not show a permanent increase in disability during the relevant period of ACDUTRA. The decedent's enlistment and separation from ACDUTRA reports of medical examination reflect normal clinical evaluations of the right lower extremity. Moreover, his service treatment records during this period are silent for relevant complaints or treatment. Thus, in light of the foregoing, the Board concludes that the appellant has not met the burden of proof. The appellant has not shown that the decedent's right leg disability underwent a permanent increase in disability during his period of ACDUTRA from June 1963 to December 1963.

The Board acknowledges the appellant's contention that the decedent's referral for release from Reserve service due to physical disqualification based on his right leg pain demonstrates in-service aggravation of his preexisting right leg disability. However, the Board notes his Reserve service records contain no line of duty determinations, to include for a right leg injury. 

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine; however, as the preponderance of the evidence is against the claim, the doctrine is not applicable. Accordingly, service connection for right tibial and fibular fractures is not warranted. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).

2. Service connection for migraine headaches is denied.

3. Service connection for an acquired psychiatric disorder is denied.

The appellant seeks service connection for the decedent's migraine headaches and acquired psychiatric disorder. The decedent and the appellant asserted his migraine headaches and acquired psychiatric disorder onset during his ACDUTRA service and/or are related to his in-service exposure to contaminated water at Camp Lejeune. See, e.g., March 2021 Board hearing transcript at 3. The Board finds entitlement to service connection is not warranted. 

As indicated above, the decedent has not established "veteran" status; however, the July 2019 decision on appeal conceded exposure to contaminated water at Camp Lejeune. 38 C.F.R. § 3.307 (a)(7)(iii). 

A veteran, or former reservist or member of the National Guard, who had no less than 30 days (consecutive or nonconsecutive) of service at Camp Lejeune during the period beginning on August 1, 1953, and ending on December 31, 1987, shall be presumed to have been exposed during such service to the contaminants in the water supply, unless there is affirmative evidence to establish that the individual was not exposed to contaminants in the water supply during that service. 38 C.F.R. § 3.307 (a)(7)(iii). Exposure described under 38 C.F.R. § 3.307(a)(7)(iii) is an injury under 38 U.S.C. § 101 (24)(B) and (C). If an individual described in paragraph (a)(7)(iii) of this section develops a disease listed in §3.309(f), VA will presume that the individual concerned became disabled during that service for purposes of establishing that the individual served in the active military, naval, or air service. 38 C.F.R. § 3.307 (a)(7)(iv). Specifically, if a veteran, or former reservist or member of the National Guard, was exposed to contaminants in the water supply at Camp Lejeune during military service and the exposure meets the requirements of §3.307(a)(7), the following diseases shall be service-connected even though there is no record of such disease during service, subject to the rebuttable presumption provisions of §3.307(d): (1) kidney cancer, (2) liver cancer, (3) non-Hodgkin's lymphoma, (4) adult leukemia, (5) multiple myeloma, (6) Parkinson's disease, (7) aplastic anemia and other myelodysplastic syndromes, and (8) bladder cancer. 38 C.F.R. § 3.309 (f). The diseases listed in §3.309(f) shall have become manifest to a degree of 10 percent or more at any time after service. 38 C.F.R. § 3.307 (a)(7)(ii). 

A June 1963 service treatment record indicates the decedent passed out and shows a complaint of headache; however, physical examination was normal. A December 1963 report of medical examination completed upon separation from ACDUTRA reflects a normal clinical evaluation of the 'head, face, neck, and scalp' and the neurologic system. Additional service records from his Reserves service includes reports of medical examination dated in March 1964 and July 1965, which similarly reflect a normal clinical evaluation. The decedent endorsed a history of frequent headaches on his March 1964 and July 1965 reports of medical history. 

Post-service VA treatment records dated throughout May 2004 through April 2017 note depression and insomnia as active problems. A May 2004 VA treatment record notes the decedent denied psychiatric symptoms and a history of psychiatric care. An April 2005 private treatment record notes the decedent was alert and oriented to person, place, and time but was a poor historian. An April 2005 treatment record notes recommendation for psychiatry evaluation because of 'significant element of depression.' An April 2007 private treatment record notes a negative neurology and psychology examination. A May 2008 VA treatment record notes the decedent reported psychiatric hospitalization in the early 1970s for migraine headaches. A May 2008 VA treatment record also indicates the decedent reported his depression started three years prior after his heart problems and strokes. March 2012, July 2013, and February 2014 VA treatment records reflect the decedent denied headaches and feeling depressed. A November 2013 VA treatment record notes a prior medical history of depression. A March 2014 VA treatment record notes anxiety, sadness, mood swings, irritability, and depression. A June 2014 private treatment record notes no headache. An August 2014 private treatment record notes negative psychiatric and neurological examinations. January 2015 private treatment records note normal affect, no anxiety, and orientation to person, place, and time. An April 2015 private treatment record indicates the decedent denies headaches. A May 2016 private treatment record notes a complaint of headache. A June 2016 private treatment record notes congruent mood and affect and indicates the decedent denied anxiety or depression. A July 2016 private treatment record notes the decedent displayed normal mood and affect and was awake, alert, and oriented to person, place, and time. A subsequent July 2016 private treatment record notes the decedent's neurological and psychiatric/behavioral examination was negative for headaches and confusion. A July 2016 private treatment record also noted he had normal mood, affect, and behavior. An August 2016 private treatment record notes examination was negative for headaches or psychiatric disorder. An October 2016 private treatment record notes appropriate mood and affect. A January 2017 private treatment record notes the decedent answered questions appropriately with normal affect and denied hallucinations or suicidal ideation. A May 2017 private treatment record notes a headache with findings of cerebral atrophy and age indeterminate left basal ganglia infarction.

In a March 2018 VA Form 21-4138, the decedent's representative asserted his psychiatric disorder onset after he was disqualified from the Reserves. The appellant has alternatively asserted the decedent's psychiatric disorder onset after he found out about his exposure to contaminants at Camp Lejeune. See March 2021 Board hearing transcript at 3. 

After a review of the evidentiary record, the Board finds the preponderance of the evidence weighs against entitlement to service connection for migraines and an acquired psychiatric disorder. 

Regarding the decedent's migraine condition, the Board acknowledges that his service treatment records reflect a complaint of headache during his ACDUTRA service; however, his service treatment records are otherwise silent for a headache condition. There was no evidence of a chronic neurological disorder, to include chronic headaches. While the decedent and his wife are competent to report evidence within their personal knowledge, including whether headaches were recurrent after ACDUTRA, neither are competent to provide a diagnosis in this case or determine that those symptoms were manifestations of a 'current' headache disability. The issue is medically complex, as it requires specialized medical knowledge. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Moreover, even if they were competent, the Board finds the reports of migraine consistently since service to be not credible as such reports are inconsistent with his contemporaneous treatment records. Indeed, following service, the record generally reflects that the decedent denied having headaches when questioned by medical personnel. 

Similarly, the decedent's service treatment records are silent for an acquired psychiatric disorder. VA and private treatment records show the decedent first reported problems with depression in 2005, decades after his separation from service. While the decedent and the appellant would be competent to report him having experienced symptoms of an acquired psychiatric disorder since service, the Board notes that they contend his psychiatric disorder onset after service in light of news of his in-service exposure to contaminated water at Camp Lejeune. In contrast, the decedent's post-service treatment records reflect the decedent reported his psychiatric symptoms onset following his heart problems and strokes. Indeed, a May 2008 VA treatment record indicates the decedent reported his depression started three years prior after his heart problems and strokes. Thus, the Board further finds the lay reports regarding the onset of the decedent's psychiatric symptoms not credible.

While the decedent and the appellant believe his acquired psychiatric disorder and migraines are related to an in-service injury, event, or disease, in this case, neither is competent to provide a nexus opinion regarding this issue. The issue is medically complex, as it requires knowledge of pathology and interpretation of complicated diagnostic medical testing. Therefore, it is outside the competence of both the decedent and the appellant in this case because the record does not show that they have the medical training or credentials to make such a determination. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007); see also Kahana v. Shinseki, 24. Vet. App. 428 (2011). 

The Board acknowledges that VA opinion has not been obtained but finds one is not warranted in this case. The Secretary is required to provide a medical examination or opinion "if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim" and (1) the record contains competent evidence of a current diagnosed disability or persistent or recurrent symptoms of disease; (2) the evidence establishes that the veteran suffered an in-service event, injury or disease; (3) and the evidence indicates that the claimed disability or symptoms may be associated with the established in-service event, injury or disease or with another service-connected disability. 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet.App. 79, 85-86 (2006); ); see also Waters v. Shinseki, 601 F.3d 1274, 1278 (2010) (a mere conclusory generalized lay statement that service caused the claimant's current condition is insufficient to require the Secretary to provide an examination). 

Here, the evidence of record fails to show complaints or diagnoses of psychiatric disorders or headaches during ACDUTRA or an indication that the currently claimed psychiatric and headaches disabilities and/or symptoms may be associated with such. While there is an assertion of recurrent psychiatric and headaches symptoms since service, such is not credible particularly when compared to the contemporaneous record. Indeed, the Board reiterates that a May 2008 VA treatment record indicates the decedent reported his depression began around 2005 after he had heart problems and strokes- this is decades after ACDUTRA. His post-service records also reflect that he denied headaches on numerous occasions when questioned by medical personnel.

Furthermore, the decedent's conditions are not on the list of diseases associated with his exposure to contaminated water at Camp Lejeune. There is no other competent evidence of record indicating such conditions may due to such exposure. The decedent and the appellant contend that his diagnoses are due to the exposure at Camp Lejeune, but this question is not one that is capable of lay observation, within the common knowledge of a lay person, or otherwise within the competence of a non-medical expert. To the contrary, it is the subject of numerous and advanced-level scientific/medical studies. See 82 Fed. Reg. 4173 (Jan. 13, 2017). Thus, the lay statements cannot constitute competent evidence tending to increase the likelihood of a nexus to service. See Fountain, 27 Vet. App. at 274-75; Monzingo v. Shinseki, 26 Vet. App. 97, 106 (2012); see also Waters, 601 F.3d at 1278. Thus, the low standard of McLendon has not been met and a VA opinion is not warranted. Id.

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine; however, as the preponderance of the evidence is against the claims, the doctrine is not applicable. Accordingly, service connection for migraines and an acquired psychiatric disorder is not warranted. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).

4. Service connection for bilateral hearing loss is denied.

5. Service connection for bilateral tinnitus is denied.

The appellant also seeks service connection for bilateral hearing loss and tinnitus. The Board finds entitlement to service connection is not warranted.

As indicated above, the decedent has not established "veteran" status. Claims based on a period of ACDUTRA or INACDUTRA are never entitled to the presumption of service connection outlined in 38 C.F.R. § 3.307 and § 3.309. Smith v. Shinseki, 24 Vet. App. 40 (2010). 

For the purpose of applying the laws administered by VA, impaired hearing is considered a disability when the auditory threshold in any of the frequencies 500, 1,000, 2,000, 3,000, or 4,000 Hertz is 40 decibels (dB) or greater; or when the auditory threshold for at least three of the frequencies 500, 1,000, 2,000, 3,000, or 4,000 Hertz is 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. When audiometric test results at separation from service do not meet the regulatory requirements for establishing a "disability" at that time, a veteran may nevertheless establish service connection for a current hearing disability by submitting evidence that the current disability is causally related to service. Hensley v. Brown, 5 Vet. App. 155, 160 (1993). The threshold for normal hearing is from 0 to 20 decibels. Id at 157.

The question for the Board is whether the decedent had a 'current' disability that began during service or is at least as likely as not related to an in-service disease or injury. The Board concludes that the decedent does not have a current diagnosis of bilateral hearing loss for VA purposes and has not had one at any time during the pendency of the claim or recent to the filing of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). Additionally, the Board concludes that, while the decedent had a diagnosis of tinnitus during the appeal period, the preponderance of the evidence weighs against finding that the such began during service or is otherwise related to an in-service injury or disease. 

Regarding the claim of service for bilateral hearing loss, the March 2018 VA examiner evaluated the decedent prior to him passing in October 2018, and determined that, while he experienced subjective symptoms of hearing loss, he did not have a diagnosis of bilateral hearing loss for VA purposes. Further despite consistent treatment since 2004, VA and private treatment records do not contain a diagnosis of hearing loss for VA purposes. See, e.g., October 2016 private treatment record. While the decedent and the appellant believe he has a current diagnosis of bilateral hearing loss, they are not competent to provide a diagnosis in this case. The issue is medically complex, as it requires the ability to interpret complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the competent medical evidence of record, which indicates the decedent does not have a current diagnosis of bilateral hearing loss for VA purposes. 

In reaching this conclusion, the Board acknowledges the appellant's contention that the March 2018 VA examination is inadequate because the examiner did not obtain speech discrimination scores. However, the Board finds the examination is adequate for adjudication purposes because the examiner indicated that the use of word recognition scores was not appropriate for the decedent because of language difficulties, cognitive problems, inconsistent word recognition scores, etc. that make combined use of puretone average and word recognition scores inappropriate.

Regarding the claim for service connection for tinnitus, the Board notes that the decedent's ACDUTRA service treatment records are silent for complaints of or treatment for tinnitus. The decedent's June 1963 and December 1963 reports of medical examination reflect normal clinical evaluations of the ears. The decedent also denied a history of running ears or ear, nose, or throat trouble on his June 1963 report of medical history. His subsequent Reserve reports of medical examination and history are similarly silent for any related complaints. His post-service VA and private treatment records are similarly silent for reports of tinnitus. Indeed, the record reflects the decedent regularly denied tinnitus. See, e.g., May 2004 VA treatment record. 

The March 2018 VA examiner indicated the decedent reported recurrent tinnitus; however, during the examination, the decedent reported onset between 1965 and 1967 while he was working for the Boy Scouts of America. The examiner opined that it was less likely than not that the decedent's tinnitus was a symptom of his hearing loss. The examiner noted that tinnitus may be caused by many different conditions or agents including but not limited to diet, disease, aging, stress, medication, trauma, and work or recreation-related noise exposure. The examiner indicated that the decedent's very specific description of the onset of his tinnitus makes it less likely as not that military noise contributed significantly to his reported tinnitus. 

After a review of the evidentiary record, the Board finds the preponderance of the evidence weighs against entitlement to service connection for tinnitus. VA and private treatment records show the decedent was not diagnosed with tinnitus until March 2018, decades after his separation from service. While the decedent and the appellant are competent to report evidence within their personal knowledge, including the decedent experiencing tinnitus since service, the Board finds the probative weight of the lay statements to be outweighed by the March 2018 VA opinion. The examiner's opinion is probative, because it is based on an accurate medical history and provides an explanation that contains clear conclusions and supporting data. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Moreover, the lay reports of tinnitus since service are inconsistent with the decedent's contemporaneous treatment record, which show he regularly denied tinnitus. 

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine; however, as the preponderance of the evidence is against the claim, the doctrine is not applicable. Accordingly, service connection for bilateral hearing loss and tinnitus is not warranted. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).

 

 

D. JOHNSON

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board M.Aoughsten, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.